IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| ROKIT WORLD, INC.<br><br>And<br><br>JONATHAN KENDRICK<br><br>      Plaintiffs<br><br>    v.<br><br>ROCKET BALL, LTD<br>d/b/a THE HOUSTON ROCKETS AND CLUTCH CITY SPORTS & ENTERTAINMENT L.P.<br>1510 Polk Street<br>Houston, TX, 77002<br><br>And<br><br>ROCCO MAGNI<br>1000 Louisiana<br>Suite 5100<br>Houston, TX 77002-5096<br><br>AND<br><br>SUSMAN GODFREY LLP<br>1000 Louisiana<br>Suite 5100<br>Houston, TX 77002-5096<br><br>      Defendants. | **Case No:** |

## COMPLAINT

Plaintiff ROKIT WORLD, INC. ("ROKIT WORLD") and JONATHAN KENDRICK ("MR. KENDRICK") hereby bring suit against Defendants ROCKET BALL, LTD d/b/a THE HOUSTON ROCKETS AND CLUTCH CITY SPORTS & ENTERTAINMENT L.P. (the

1

"ROCKETS"), ROCCO MAGNI ("MAGNI"), and SUSMAN GODFREY, LLP ("SUSMAN") for fraud and assault.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this case pursuant to both 28 U.S.C. § 1331 and 28 U.S.C § 1332 as there is a federal question and the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000

2. Venue is proper pursuant to 28 U.S.C. § 1391 in that this is a district in which a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred.

## THE PARTIES

3. ROKIT WORLD is the parent company of ABLE EVENTS, INC. ("ABLE EVENTS") which was formerly known as ROKiT Marketing, Inc ("RMI"). Both ROKIT WORLD and ABLE EVENTS are incorporated under the laws of Delaware, but ROKIT WORLD does substantial business in this judicial district and has a physical location in Jacksonville, Florida. For the purposes of this lawsuit, this entity formerly known as RMI will be referred to as ABLE EVENTS.

4. MR. KENDRICK in an individual and a citizen of the United Kingdom. MR. KENDRICK does substantial business in Florida and in this judicial district. Mr. KENDRICK has a physical residence in the state of Florida.

5. The ROCKETS are a corporation incorporated under the laws of Texas.

6. Defendant MAGNI is an individual and a citizen of Texas. At all material times, Defendant MAGNI was employed as a partner by Defendant SUSMAN.

7. Defendant SUSMAN is a limited liability partnership incorporated under the laws of Texas.

2

**STANDING**

8. Plaintiffs have standing to bring claims because they have been directly and proximately harmed by conduct of the Defendants as set forth herein.

9. As a direct and proximate result of the fraudulent statements made by the Defendants, Plaintiffs have suffered significant financial loss and damage to their goodwill and business reputation and imminent fear of bodily harm and/or offensive contact.

**FACTS**
*Background Facts*

10. In August of 2018, the Houston Rockets were actively looking for a jersey sponsor for the upcoming seasons and had retained Jason Miller ("Mr. Miller") of Excel Sports Management to broker the deal. In early August, Mr. Miller reached out to Clinton Ehrlich ("Mr. Ehrlich"), Chief Marketing Officer of ABLE EVENTS, to discuss the possibility of ABLE EVENTS serving as the Rockets' official jersey sponsor.

11. At the same time, ROKiT Drinks LLC—another member of the ROKIT WORLD of companies and a premium drinks business that offers a unique collection of soft drinks and alcohol brands across spirits, beer and energy drinks which was founded in 2014 by MR. KENDRICK—was offering numerous brands of alcoholic beverages for sale in the United States: Bogart's Spirits, which consisted of Bogart's Vodka, Bogart's Gin, Bogart's Whiskey, Bogart's Rum, Bandero Premium Tequila, and ABK Beer, which included styles such as Hell, Edel, Pils, Schwarz and Rose (collectively, "ROKiT Drinks' Products").

12. Tilman Fertitta ("Fertitta") is the owner of the ROCKETS and he is also the President, Chairman, and CEO of Landry's LLC ("Landry's"). Landry's is a dining, hospitality,

3

entertainment, and gaming company with over 600 locations worldwide. Fertitta is widely known to be deeply connected to the Mafia.[1]

13. From the very outset, the ROCKETS proposed a two-pronged agreement, whereby ABLE EVENTS would pay an annual multi-million-dollar fee to the ROCKETS to be a named sponsor on the Houston Rockets' National Basketball Association ("NBA") jerseys and in exchange, Landry's would purchase, feature and promote ROKiT Drinks' Products at all of its over 600 locations worldwide.

14. As just one example of this two-pronged proposal by the ROCKETS and Landry's, in an August 7, 2018, email from Mr. Miller to Mr. Ehrlich, Mr. Miller stated:

> Patrick [Fertitta] also made it clear that we could push your products at all 600 Landry's owned and operated locations around the world. He even threw out the idea of specialized cocktails at the restaurants promoting the [ROKiT Drinks] brands.

15. Thus, at all material times, the proposal from the ROCKETS was two-pronged and contained two separate components: (1) a jersey sponsorship agreement between ABLE EVENTS and the ROCKETS and (2) a beverage agreement between ROKiT Drinks and Landry's. Because of Mr. Kendrick's interest in the broad, two-pronged partnership proposed by the ROCKETS and Fertitta and the synergies that existed between his companies and Fertitta's companies, ABLE EVENTS agreed to press forward with negotiations concerning the ROCKETS jersey sponsorship portion of the proposed agreement.

16. On or about August 14, 2018, MR. KENDRICK, acting on behalf of ABLE EVENTS and ROKiT Drinks, and Fertitta, acting on behalf of the ROCKETS and Landry's, met over lunch at Maestro's in Houston to discuss the proposed partnership between their respective

---

[1] Ashish Mathur, *Rockets news: Tilman Fertitta's family has deep mob ties*, Clutch Points, Jun. 18, 2020, available at: https://clutchpoints.com/rockets-news-tilman-fertitta-family-has-deep-mob-ties

4

businesses. Also present at this meeting were Tad Brown, Mr. Miller, Patrick Fertitta and Mr. Ehrlich.

17. At the meeting, the parties reviewed the August 13, 2018 Partnership Proposal and Presentation prepared by the ROCKETS. Consistent with Mr. Miller's email from the week prior, the ROCKETS' comprehensive Partnership Proposal also detailed terms relating to both a jersey sponsorship agreement with the ROCKETS and a proposed beverage agreement with Landry's.

18. As to the sponsorship agreement, the ROCKETS' Partnership Proposal contemplated that ABLE EVENTS would pay an annual multi-million-dollar fee to the ROCKETS to be a named sponsor on the ROCKETS' game jerseys and purportedly would receive numerous other benefits outlined in the sponsorship agreement. As for the beverage arrangement, the ROCKETS and Landry's promised to feature and promote Bogart Spirits, Bandero Premium Tequila, and ABK Beer at over 600 dining, hospitality, entertainment, and gaming properties.

19. The following day, Mr. Miller sent an email to MR. KENDRICK and Mr. Ehrlich stating, " "[t]his is going to be a **monumental partnership for all <u>three</u> organizations** (ROKIT, the Rockets, and **Landry's Inc**.)." Mr. Miller also indicated that he would be introducing Alison Kennedy, CEO of ROKiT Drinks, to James Kramer, Vice President of Beverage Operations of Landry's/Fertitta Entertainment, "[u]nder separate cover… so they can [get] the process started on that side of the house [i.e., the beverage deal], and in the meantime, [he and the Rockets] [would].… get going on the sponsorship agreement." (*Id*.). Finally, Mr. Miller sent a separate email introducing Ms. Kennedy and Mr. Kramer so that they could begin working together "**to nail down all the details necessary to lock in distribution for the portfolio at all**

5

**600+ Fertitta Entertainment locations**." That afternoon, Ms. Kennedy and Mr. Kramer had a phone call to begin doing just that.

20. Seeing that Landry's appeared to be moving forward with the beverage agreement portion of the overall partnership agreement, ABLE EVENTS agreed and finalized the jersey sponsorship agreement with the ROCKETS on or around October 9, 2018. ABLE EVENTS was obligated to pay and did pay the Rockets a Base Contract Price of $9,750.000 for the 2018-2019 season in exchange for advertising and promotional benefits.

21. The jersey sponsorship agreement needed to be finalized before the start of the 2018 NBA season on October 16, 2018, and thus, Plaintiffs relied on the ROCKETS' fraudulent assertions that the beverage portion of the overall partnership agreement would be worked out and executed shortly thereafter and thus agreed to execute the jersey sponsorship portion of the overall partnership agreement earlier in time for the beginning of the 2018 NBA season.

22. At all material times, MR. KENDRICK and ABLE EVENTS made it clear that their agreement to sponsor the ROCKETS jersey was predicated on the execution of the Landry's beverage agreement, and that without the Landry's beverage agreement, MR. KENDRICK and ABLE EVENTS had no interest in the ROCKETS jersey sponsorship agreement, and the ROCKETS and Fertitta had actual knowledge of this.

23. This is because the Landry's beverage agreement, if executed by Landry's, to purchase, feature and promote ROKiT Drinks' products at all over 600 Landry's locations would have netted profits to ROKiT Drinks in the tens of millions of dollars, which the ROCKETS and Fertitta had actual knowledge of.

24. On September 12, 2018, Tad Brown, CEO of the Houston Rockets ("Tad Brown"), and the Houston Rockets suddenly and without any prior warning advised Able that

the logo to be worn on the Houston Rockets' game jerseys would have to be changed from simply "ROKiT" to "ROKiT Phones." This edict from the Houston Rockets that the logo would have to be changed resulted from objections by the National Basketball Association (the "NBA") to the "ROKiT" logo. Previously unbeknownst to Able, Tad Brown advised that the NBA does not typically allow NBA teams to display ads by alcohol manufacturers on team uniforms. The red and white "ROKiT" logo that was the subject of the Sponsorship Agreement was, in fact, the, logo of ROKiT Drinks. At the time of the negotiation and execution of the Sponsorship Agreement, ROKiT Drinks was the only company utilizing this specific logo. ROKiT Phones would not launch its product until Spring of 2019. Without prior consultation with ABLE EVENTS, Tad Brown and the Houston Rockets had taken it on themselves to present to the NBA an alternative logo which read "ROKiT Phones" and convinced the league to accept it.

25. When Tad Brown sprung this on Jonathan Kendrick at the eleventh hour, Mr. Kendrick understandably balked. A logo reading "ROKiT Phones" was not the deal which ABLE EVENTS had bargained for. Although Mr. Kendrick did not threaten to pull out of negotiations for the Sponsorship Agreement at that time, he made very clear to Tad Brown and the Houston Rockets that this was not just a small matter that could be quickly resolved. He stressed that it was as significant to ROKiT Marketing as it would be to the Houston Rockets if they were suddenly asked to change the team's logo.

26. The Sponsorship Agreement would have obligated ABLE to pay the Houston Rockets $9.7 million in the first year of the deal. Fearful that the Houston Rockets were going to lose the Sponsorship Agreement with ROKiT Marketing, and the significant revenue, Tad Brown on behalf of the Houston Rockets subsequently represented to Jonathan Kendrick that he had somehow convinced the league to relent and to allow the "ROKiT"-only logo on the jerseys. It is

clear that the Houston Rockets deceived the NBA and never revealed that a beverage deal was part of consideration for the Sponsorship Agreement.

27. In the following months, ROKiT Drinks and Landry's did work out and finalize the beverage portion of the partnership agreement, but immediately after this portion of the agreement was reached, it became clear that Landry's had no intent on actually following through on the terms of the agreement, and that the beverage agreement had only been proposed by the ROCKETS, Fertitta, and Landry's to fraudulently induce ABLE EVENTS to agree to the multi-year, multi-million dollar sponsorship agreement with the ROCKETS.

28. The ROCKETS and Fertitta were only fraudulently pretending to be interested in the beverage agreement to fraudulently induce ABLE EVENTS to agree to the multi-year, multi-million dollar jersey sponsorship agreement with the ROCKETS, and once ABLE EVENTS had made their payment for the jersey sponsorship agreement, they quickly switched gears and refused to carry out the beverage agreement.

29. Only a very small percentage of the Landry's locations ever offered or ordered products from ROKiT Drinks. On or around July 9, 2019 the sales from ROKiT Drinks to Landry's totaled approximately $256,421.25 and only a small portion of the Landry's establishments ever even offered ROKiT Drinks' Products on their menus.

30. On October 22, 2018, Alison Kennedy of ROK Drinks travelled to Houston to meet with James Kramer of Landry's/Fertitta Entertainment. In connection with Ms. Kennedy's travel, Dawn Keen, Senior Director of Corporate Partnerships for Houston Rockets, wrote the following email to Coleman Hudson at Landry's distinguishing the two relationships.

> Hi Coleman!
> I would like to e-introduce you to Alison Kennedy, our newest partner with ROKiT and ROK Drinks. She will be coming to Houston this week for meetings at Toyota Center and with James Kramer. Can you please assist her with a

preferred partner rate for her stay? She will be here Tues - Thurs this week. Thank you!

31. At no time during the term of the Agreement did the Houston Rockets, Tad Brown, Patrick Fertitta or Tilman Fertitta ever advise ROKiT Marketing that the beverage deal that had been agreed to did not exist. Instead, ROCKETS and their management promised to work hard to satisfy the generate sales.

32. Indeed, on or around January 9, 2019, ROKiT Marketing became aware of the lack of performance by the ROCKETS. Accordingly, Jonathan Kendrick sent an email to Gretchen Scheirr and Tad Brown of the ROCKETS stating as follows:

> [I]t was clearly agreed that you wold [sic] help us get our drinks into your outlets and that was the main reason I got the sponsorship through with the Rockets.
> NOW that said I love the rockets sponsorship… [b]ut it really does not bode well when we are due to pay you the next installment next week as agreed, so almost 10m paid and the sales for alcohol stand at… [a] grand total of $11,037.00!!!!!! Or 0.01% of the sponsorship amount.

33. A response to this email came from James Kramer of Landry's/Fertitta Entertainment on January 10th, 2019, where Mr. Kramer wrote:

> I am providing a quick update knowing you are reviewing sales and are concerned the numbers look small. As I am sure you are aware, several different things are happening which includes opening new states, distributor changes, and product in transport. When you and I spoke in December I gave you my word that I would ramp up ABK and Bandero Tequila instead of waiting for the new Bogart bottle launch. These efforts are well underway[.]

34. Subsequently, ABLE EVENTS and the ROCKETS went to arbitration over the jersey sponsorship agreement, and through this continued and sustained fraud, the ROCKETS were able to win an award in arbitration.

35. As of January 21, 2020, ROKiT Drinks had only made approximately $440,000 in sales to a small portion of the Landry's locations. This constituted only a small fraction of the sales expected by ROKiT Drinks.

36. As evidence that the ROCKETS never intended to honor the beverage portion of the overall partnership agreement, in subsequent litigation, the ROCKETS began to contend that such an agreement was illegal under Texas Alcohol and Beverage Code § 102.16(a)(1) and §102.07. Given Fertitta's status as an individual who is "recognized as a world leader in the dining, hospitality, entertainment and gaming industries" and has over 40 years of experience owning and operating establishments across the country, it is clear that they were aware of these code provisions when they proposed the beverage agreement to the Plaintiffs to fraudulently induce the jersey sponsorship agreement between ABLE EVENTS and the ROCKETS, yet they hid this from the Plaintiffs. Indeed, to the contrary, MR. KENDRICK is from the United Kingdom, where no such code provisions exist, and the ROCKETS knew and took advantage of this.

37. Furthermore, in or about January 2022, Defendants MAGNI and SUSMAN, in concert with their clients, the ROCKETS and Fertitta, have made threats against MR. KENDRICK, and given his client's widely reported ties to the Mafia[2], these threats have placed MR. KENDRICK in reasonable fear of imminent bodily harm and/or offensive contact. In the weeks following Defendants MAGNI and SUSMAN's threats, MR. KENDRICK became aware of suspicious vehicles parked outside of his offices and believes that he was followed on one or more occasion.

38. As a direct and proximate result of the fraudulent actions of the ROCKETS, ROKIT WORLD has lost the Bogarts brand, causing approximately $100 million dollars in damages.

---

[2] *See supra* fn. 1.

39. As a direct and proximate result of the fraudulent actions of the ROCKETS, MR. KENDRICK has lost 90% equity in Bandero Tequila, causing approximately $260 million dollars in damages.

**CAUSES OF ACTION**
**Count 1 –** *Fraud*
***Defendant the Rockets***

40. Plaintiffs reallege and incorporate the facts set forth in this Complaint as if set forth in full herein.

41. In or around August of 2018, via email, over phone, and in person, Defendant ROCKETS, and its agents and assigns, made the following fraudulent statement of a material fact: **As part of an enterprise-wide collaboration in conjunction with the jersey sponsorship agreement with Defendant ROCKETS, Landry's would "purchase, feature and promote ROKiT Drinks' products at all over 600 Landry's locations."**

42. Defendant ROCKETS was aware of the falsity of this statement because they never actually intended for Landry's purchase, feature and promote ROKiT Drinks' products at all over 600 Landry's locations.

43. Defendant ROCKETS made this false statement of material fact with the clear intention that Plaintiffs would rely on it, as it was made to induce ABLE EVENTS to enter into the jersey sponsorship agreement with the ROCKETS.

44. Plaintiffs relied on Defendant ROCKETS' fraudulent statements as ABLE EVENTS agreed to the jersey sponsorship agreement with the ROCKETS based on the fraudulent assurances and guarantees that Landry's would purchase, feature and promote ROKiT Drinks' products at all over 600 Landry's locations.

45. Defendant ROCKETS had actual knowledge that ABLE EVENTS would not have entered into the jersey sponsorship agreement with the ROCKETS without the corresponding agreement that Landry's would purchase, feature and promote ROKiT Drinks' products at all over 600 Landry's locations.

46. As a result of the fraudulent and false statement and omission by Defendant ROCKETS, Plaintiffs suffered severe damage both financially, as well as to their goodwill and business reputation.

### CAUSES OF ACTION
#### Count 2 – *Assault*
*Defendants Magni and Susman against Plaintiff Mr. Kendrick*

47. Plaintiff MR. KENDRICK realleges and incorporate the facts set forth in this Complaint as if set forth in full herein.

48. Defendants MAGNI and SUSMAN have made numerous threats to injure MR. KENDRICK.

49. Defendants MAGNI and SUSMAN's client, Fertitta, is known to have extensive ties to the Mafia.

50. MR. KENDRICK understood these threats to place him in reasonable fear of imminent bodily harm and/or offensive contact by Defendants MAGNI and SUSMAN and their agents and/or surrogates.

### CAUSES OF ACTION
#### Count 3 – *Intentional Infliction of Emotional Distress*
*Defendants Magni and Susman against Plaintiff Mr. Kendrick*

51. Plaintiff MR. KENDRICK realleges and incorporate the facts set forth in this Complaint as if set forth in full herein.

52. Defendants MAGNI and SUSMAN have made numerous threats to injure MR.

KENDRICK.

53. Defendants MAGNI and SUSMAN's client, Fertitta, is known to have extensive ties to the mafia.

54. Defendants MAGNI and SUSMAN's conduct was intentional and outrageous.

55. As a result of these threats, MR. KENDRICK has suffered severe emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

a. Awarding Plaintiffs compensatory including actual, consequential, incidental for malicious tortious concerted conduct, jointly and severally, in an amount in excess of $400,000,000 or in an amount to be determined at by a jury at trial.

b. Awarding Plaintiffs punitive damages in an amount to be determined by a jury.

c. A preliminary and permanent injunction preventing threats and harassment of Defendants MAGNI and SUSMAN.

d. Granting such other relief as the Court deems appropriate and necessary.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS SO TRIABLE**.

Dated: August 23, 2024                                     Respectfully Submitted,


    */s/ Larry Klayman*
Larry Klayman, Esq.
Klayman Law Group, P.A.
Florida Bar. No. 246220
7050 W. Palmetto Park Rd
Boca Raton FL 33433
Telephone: 561-558-5336
Email: leklayman@gmail.com

*Counsel for Plaintiffs*

14